UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN V.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:24-CV-768-ACL |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Steven V. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he was capable of performing work existing in significant numbers in the national economy.   This matter is pending before the undersigned United States Magistrate Judge, with consent of the

---

[1]On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2]Frank Bisignano became the Commissioner in May 2025.   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I.  Procedural History

Plaintiff filed his applications for benefits on April 17, 2019.   (Tr. 201-02, 195-200.) He claimed he became unable to work on December 31, 2016, due to depression, back issues, foot pain and nerve damage, leg nerve damage, memory issues, and brain issues.   (Tr. 258.) Plaintiff was 29 years of age on his alleged onset of disability date.   (Tr. 969.)   His applications were denied initially.   (Tr. 102-07.)   On September 30, 2020, after a hearing, an ALJ found that Plaintiff was not disabled.   (Tr. 1010-22.)   The Appeals Council denied Plaintiff's claim for review.   (Tr. 1028-31.)

Plaintiff filed an action in the United States District Court for the Eastern District of Missouri seeking review of the Commissioner's decision.   The Commissioner filed a Motion to Remand, requesting that the ALJ on remand fully evaluate all the medical opinion evidence in accordance with the applicable regulations.   (Tr. 1043-44.)   The Court[3] remanded the case for further administrative proceedings on September 13, 2021.   *Id.*   Following an additional hearing, the ALJ issued an unfavorable decision on May 10, 2023.   (Tr. 953-71.)   Thus, this decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ's decision "fails to properly evaluate Plaintiff's pain."   (Doc. 16 at 3.)   Plaintiff next argues that the decision "fails to properly

---

[3] United States Magistrate Judge Nanette A. Baker.

evaluate medical opinion evidence." *Id.* at 7.

## II.  The ALJ's Determination

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2020.  (Tr. 955.)  She found that Plaintiff has not engaged in substantial gainful activity since December 31, 2016, the alleged onset date.  *Id.*  Next, the ALJ concluded that Plaintiff had the following severe impairments: residuals from lumbar disc herniation, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder.  (Tr. 956.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 957.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the claimant can occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds.  He can occasionally balance (as defined by the DOT and SCO) and occasionally stoop, kneel, crouch, and crawl.  He should avoid hazards such as unprotected heights and dangerous machinery, extreme cold, extreme heat, and vibration.  He is able to complete simple, routine tasks with minimal changes in job duties and setting.  He is able to occasionally interact with coworkers, supervisors, and the general public.

(Tr. 959.)

The ALJ found that Plaintiff was capable of performing work existing in significant numbers in the national economy, such as assembler, production worker, and product inspector. (Tr. 969-70.)  She concluded that Plaintiff was, therefore, not under a disability from his alleged onset date through the date of the decision.  (Tr. 970.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on April 17, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on April 17, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 971.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

## III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other

evidence listed in the regulations.    *See id*.    If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.    *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.    *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).    The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.    *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).    If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.    If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.    20 C.F.R. § 416.920(a)(4)(v).    At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.    *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.    The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.    *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).    If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."    20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).    The Commissioner must then rate the degree of functional loss resulting from the impairments.    *See* 20 C.F.R. §§ 404.1520a(b)(3),

416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

As noted above, Plaintiff challenges the ALJ's evaluation of Plaintiff's subjective complaints of pain and her evaluation of the medical opinion evidence.   The undersigned will discuss Plaintiff's claims in turn.

### A.  Subjective Complaints

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.   20 C.F.R. § 404.1529(c); SSR 16-3p.   "The credibility[4] of a claimant's

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.   However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."   *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive

subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall,* 274 F.3d at 1218.   The Court must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).   When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.   *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Plaintiff argues that the ALJ erred in failing to consider any of the relevant factors other than Plaintiff's daily activities.

Defendant responds that the ALJ provided a detailed discussion of the evidence throughout her decision and her finding that Plaintiff's subjective allegations were inconsistent with the record is supported by substantial evidence.

The ALJ summarized Plaintiff's testimony regarding his limitations as follows, in relevant part:

> He reported pain and nerve damage in his leg.   He said he became dizzy with overexertion.   He said he was unable to lift a gallon of milk or complete basic household chores.   He said he could not stand or walk about his home.   He testified that he used a cane to walk which was prescribed by a doctor.   He said he had not improved since his last hearing, but he had learned to adapt to the pain. He alleged fluid leaking from his brain.

---

analysis to be applied" when evaluating a claimant's subjective complaints).

(Tr. 960.)

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record.  *Id.*  The ALJ explained:

> [T]he medical evidence does not support the severity of his alleged limitations. The medical evidence does not show that his cane was prescribed by a medical professional.   The evidence also does not support the limitations in sitting, standing, walking, and lifting alleged by the claimant.   The evidence does not show fluid leaking from his brain since the repair of a dural leak in 2017.   The medical evidence does show some memory deficits, but the medical evidence does not support more than moderate limitations in functioning.

(Tr. 960-61.)

Plaintiff takes issue with the ALJ's summary set out above, arguing that the ALJ's one-paragraph summary "is the entirety of the evaluation of plaintiff's credibility."   (Doc. 16 at 4.) The ALJ, however, devoted a number of pages of her decision to analyzing Plaintiff's self-reports, his treatment history, the medical evidence, and assessments from Plaintiff's medical providers.   In her analysis, the ALJ pointed to a number of inconsistencies between Plaintiff's allegations and the record.

As to his physical impairments, Plaintiff reported sustaining a back injury while lifting heavy weights at work prior to his alleged onset date.   (Tr. 961, 667.)   He began treatment for chronic back pain in February 2017.   *Id.*   An October 2017 MRI revealed a disc herniation at L4-5 and EMG testing was consistent with moderate chronic right L5 radiculopathy.   (Tr. 961, 677.)   Plaintiff's orthopedist, Brett A. Taylor, M.D., recommended that Plaintiff undergo surgical decompression to halt the progression of neural injury.   *Id.*   Plaintiff underwent decompression surgery on November 20, 2017.   (Tr. 690.)   Following the surgery, Plaintiff was

readmitted with an intractable headache.   (Tr. 692.)   He underwent a wound exploration and repair of a dural tear on December 6, 2017.   *Id.*   Four weeks following his back surgery, Plaintiff reported his headache had not returned and his leg pain had improved.   *Id.*

The ALJ pointed out multiple instances of Plaintiff's noncompliance with recommended treatment for his back impairment, including the following: (1) Dr. Taylor indicated that he was not wearing his corset and informed Plaintiff that his noncompliance with postoperative recommendations was negatively affecting his prognosis (Tr. 961-62, 697, 706); (2) Plaintiff did not have prescribed laboratory studies drawn (Tr. 697); (3) he canceled his recommended pain management appointments (Tr. 962, 702); (4) by the end of February 2018, Plaintiff was not taking any medications and had not seen pain management services (Tr. 962, 703); (5) he had independently sought chiropractic care against his orthopedist's advice and was not wearing his brace (Tr. 962, 703); and (6) he failed to show for a scheduled MRI (Tr. 962, 713). Noncompliance with prescribed treatment is a valid reason to discredit a claimant's subjective allegations.   *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006); 20 C.F.R. § 404.1530(a–b) (failure to follow a prescribed course of treatment without good reason precludes a finding of disability).

The record shows that Plaintiff indicated on several occasions that he did not have the financial means to obtain treatment or medication; however, there is no evidence he was ever denied treatment due to financial reasons.   *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (failure to take prescription pain medication was relevant to credibility determination where claimant said she could not afford treatment but there was no evidence she was ever denied medical treatment due to financial reasons); *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) (permissible for ALJ to consider lack of evidence that claimant sought out stronger

pain treatment available to indigents for her allegedly debilitating headaches).   In fact, Plaintiff was able to receive chiropractic treatment that was not prescribed despite his indigency.

The ALJ also cited instances in which providers noted inconsistencies between Plaintiff's subjective reports and his physical abilities.   For example, Dr. Taylor noted that Plaintiff's tolerance for therapy consisting of work hardening and conditioning did not match his capacity for physical functioning.  (Tr. 962, 706, 709.)   Although Plaintiff reported pain at a level of 7/10 at a functional capacity evaluation, he continued the physically demanding testing with no significant decline in quality of motion and gait, and was found capable of performing light exertional work with over-guarded effort.   (Tr. 962, 709.)   In April 2018, Dr. Taylor noted that Plaintiff's "tolerance for work clearly does not match his capacity to work," and that Plaintiff made numerous nonspecific complaints that were unrelated to his spinal condition.   (Tr. 962, 713).   Plaintiff became visibly upset with Dr. Taylor's opinions on Plaintiff's ability to return to work.   *Id.*   He refused to sign the paperwork and crumpled his copy while leaving.   *Id.*

The ALJ next noted that there was a gap in the medical records from June 2019 to July 2022, when he sought to establish care at Compass Health Network ("Compass").   (Tr. 963.)   A claimant's "failure to seek treatment" is not dispositive, though it certainly "may indicate the relative seriousness of a medical problem."  *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995); *see also Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (finding conservative treatment weighs against credibility); *Vanlue v. Astrue*, 4:11-cv-595-TIA, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (finding minimal and conservative mental health treatment weigh against a finding of disability).   In July 2022, Plaintiff reported his main concern as headaches, and had no tenderness of the lumbar spine and full strength in the bilateral lower extremities.

(Tr. 963, 1301.)   Plaintiff was found to have decreased lower extremity strength at a September 2023 neurological evaluation, but it was noted that he gave poor effort and was inconsistent in the examination due to complaints of pain.   (Tr. 963, 1312.)   No treatment for back pain was recommended.

With regard to Plaintiff's mental impairments, the ALJ noted that Plaintiff complained of a lack of motivation and focus in October 2017, but declined therapy. (Tr. 963, 597.)   He was prescribed antidepressant medication.   In March 2018, Plaintiff reported that the medication did not work and he had stopped taking it.   (Tr. 963, 591.)   Plaintiff's medication was adjusted.   At a June 2019 psychiatric consultative exam, Plaintiff reported he was not on any medication, citing financial issues.   (Tr. 964, 614.)   Plaintiff reported to a different examiner later that month that he completed his activities of daily living and watched television or played video games.   (Tr. 964, 742.)   The ALJ noted there was a gap in Plaintiff's psychiatric treatment from June 2019 to January 2022, when he sought care at Compass.

Plaintiff argues that the ALJ's decision "lacks any consideration of plaintiff's work history; the duration frequency, and intensity of his pain; the dosage, effectiveness, and side effects of his medications; or the precipitating and aggravating factors…"   (Doc. 16 at 4.)   As summarized above, the ALJ did discuss evidence pertaining to these factors.   Although the ALJ did not address Plaintiff's work history, the ALJ found that Plaintiff had no past relevant work. (Tr. 969.)   Plaintiff fails to point to any specific favorable evidence regarding his work history that the ALJ did not consider.

The ALJ is not mechanically obligated to discuss each of the above factors, and she must make an express credibility determination only when rejecting a Plaintiff's subjective complaints.  *Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19,

2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012)).   On review by the court, "[c]redibility determinations are the province of the ALJ."   *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)).   The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility."   *Id.*

The ALJ's written opinion reveals a thorough review of the record and proper evaluation of Plaintiff's subjective complaints.   The ALJ found that Plaintiff's complaints of disabling pain were not entirely consistent with the medical and other evidence in the record.   Notably, Plaintiff failed to comply with post-surgical recommendations, failed to take prescribed medications, had large gaps in treatment, and providers noted inconsistencies between examination findings and subjective reports.   The ALJ identified good reasons for discounting the complaints, and her determination is supported by substantial evidence on the record as a whole.

### B.  Opinion Evidence

Plaintiff next argues that the ALJ failed to properly evaluate medical opinion evidence. Specifically, he contends that the ALJ failed to explain how the supportability and consistency factors were considered when evaluating the opinions of state agency consultants Martin Isenberg, Ph.D. and James Schell, M.D.; consultative examiners Summer Johnson, Psy.D., Adam Sky, M.D., David Volarich, D.O., and Jeffrey Farb, Psy.D.; and treating orthopedist Brett Taylor, M.D.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c.   This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.   20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be."   *Id.*   An ALJ may, but is not required to, explain how he or she considered the remaining factors.   *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted).   An ALJ must articulate how persuasive she found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

### 1. Dr. Taylor

On April 23, 2018, Dr. Taylor found that Plaintiff could return to work at the light exertional level. (Tr. 713.) The ALJ stated that this opinion was "not persuasive." (Tr. 968.) She explained that the medical evidence was consistent with greater limitations in standing, walking, lifting, and carrying due to his ongoing pain and reduced range of motion of the lumbar spine. *Id.* The ALJ cited treatment notes from September 2022 from SSM pain management physician Sean P. Stoneking, M.D., which note reduced range of motion of the lumbar spine. (Tr. 1212-17.) The ALJ continued, "[h]owever, [Dr. Taylor's] opinions demonstrate the inconsistencies in his performance in the functional capacity and physical therapy evals and his over-guarded behaviors suggesting he could perform at a greater level than demonstrated." (Tr. 968.) She concluded that Dr. Taylor's opinion was not supported by later records, which reveal "more limitations in conjunction with his subjective complaints." *Id.*

Plaintiff argues that the ALJ failed to properly evaluate the supportability of Dr. Taylor's opinion because she did not consider "the opinion itself and whether Dr. Taylor provided examples of objective medical evidence and supporting explanations to support his conclusions." (Doc. 16 at 12.) He further argues that the ALJ failed to properly explain the consistency of Dr. Taylor's opinion.

The undersigned finds that the ALJ properly evaluated Dr. Taylor's opinion under the governing regulations. As to supportability, the ALJ noted that Dr. Taylor's opinion was supported by his treatment notes which revealed inconsistencies in Plaintiff's demonstrated abilities and his pain complaints. With regard to consistency, the ALJ stated that Dr. Taylor's opinion that Plaintiff was capable of performing light work was inconsistent with subsequent treatment notes indicating increased pain complaints and documenting limited range of motion.

(Tr. 1212-17.)   The ALJ ultimately crafted a physical RFC *more restrictive* than that found by Dr. Taylor.   As such, Plaintiff has failed to demonstrate any error in the ALJ's evaluation of Dr. Taylor's opinion.

### 2.  Consultative Examiners

### Dr. Summer Johnson

Plaintiff saw Dr. Johnson for a psychiatric consultative exam on June 20, 2019.   (Tr. 613-17.)   Plaintiff complained of depression "all day, every day," that he described as a feeling that he is "drowning in the nothing."   (Tr. 613.)   He reported a mistake was made during his back surgery that caused spinal leakage into his brain and now the "more he exerts himself the slower he feels he is."   *Id.*   Plaintiff complained of experiencing pain, racing thoughts, a low self-worth.   *Id.*   He was not prescribed any medications.   (Tr. 614.)   Plaintiff reported that he was fighting to get proper treatment and that he "has to win in a court scenario in order to see a doctor and be properly treated."   *Id.*   On examination, Plaintiff was underdressed, wearing a t-shirt and pajama pants and his hair was either wet or very oily; his attitude was negative; his facial expression was as though he was experiencing pain; eye contact was good; his posture was somewhat stooped, and he walked very slowly with a cane.   (Tr. 614-15.)   He demonstrated an ability to relate with the examiner and his cooperation was good.   (Tr. 615.)   Plaintiff's speech was slow, but there was no evidence of problems with expressive or receptive language functioning and no evidence of tangents or flight of ideas.   *Id.*   He reported his mood to be "miserable.   Sad, but without the emotion of sad.   Just all in all down and not great."   *Id.* There was no evidence of a thought disturbance, delusions, hallucinations, or suicidal or homicidal ideation.   *Id.*   Plaintiff demonstrated good insight and judgment.   *Id.*   As to Plaintiff's activities of daily living, he reported that he lived with his stepfather and that he

cooks, does some of the grocery shopping, and does not complete household chores.   (Tr. 616.)
Dr. Johnson found that Plaintiff had mild limitations in his ability to understand, remember, or
apply information; interact with others; concentrate; and adapt and manage himself.   *Id.*   She
diagnosed Plaintiff with recurrent, moderate major depressive disorder.   *Id.*   Dr. Johnson stated
that overall, Plaintiff's problems with pain and mood are impacting his functioning.   *Id.*

The ALJ found that Dr. Johnson's opinions were "not persuasive."   (Tr. 966.)   She
explained that the medical evidence is consistent with mild limitations in his ability to adapt and
manage, given his generally intact insight and judgment with no evidence of mood lability, but
the evidence was otherwise consistent with *moderate* limitations in functioning due to isolative
behaviors, poor concentration, and memory deficits.   *Id.*   The ALJ concluded that, while
Plaintiff's presentation in the consultative exam was generally within normal limits, his ongoing
complaints to treatment providers regarding depression and anxiety symptoms with low
motivation, poor concentration and memory issues are supportive of *more than mild* limitations
of functioning.   *Id.*

Plaintiff argues that the ALJ erred in failing to properly evaluate supportability.   The
undersigned disagrees.   The ALJ addressed the supportability of Dr. Johnson's opinions when
she noted that her opinion that Plaintiff has only mild limitations adapting and managing were
supported by Dr. Johnson's findings on exam that his insight and judgment were intact.   The
ALJ nonetheless found that Plaintiff's subsequent ongoing complaints to treatment providers
regarding depression and anxiety symptoms with low motivation, poor concentration, and
memory issues were supportive of *greater limitations*.   It is unclear how Plaintiff believes the
ALJ erred in finding greater limitations.

**Dr. Adam Sky**

Plaintiff saw Dr. Sky for an independent psychiatric evaluation at the request of his attorney on October 29, 2018.   (Tr. 718-22.)   Plaintiff complained of "crippling depression," which he described as not wanting to do anything, spending most of his days in bed, and having no motivation.   (Tr. 719.)   He started seeing a therapist two weeks prior, and before that saw a psychiatrist in middle school for a diagnosis of attention deficit disorder.   *Id.*   Plaintiff reported spending most of his day either watching television or playing video games.   (Tr. 720.)   He stated that he is able to operate a motor vehicle but only for short distances without discomfort. *Id.*   Plaintiff indicated that he has difficulty sleeping and only sleeps about two hours at a time. *Id.*   Upon examination, Plaintiff's mood was fair, his affect was depressed and congruent with his mood; he was able to communicate in a logical and coherent fashion, with intact associations; the content of his thought was within acceptable limits and focused; there was no evidence of psychotic processes; and he denied any suicidal or homicidal ideations.   (Tr. 720-21.)   Plaintiff was alert and oriented, with "adequate" attention and concentration.   (Tr. 721.)   His memory of personal and current events was "at times somewhat vague" particularly regarding dates.   *Id.* Dr. Sky diagnosed him with moderate single episode major depressive disorder and generalized anxiety disorder, and found that these disorders were causally related to his 2016 work injury. *Id.*   He expressed the opinion that Plaintiff would have "significant difficulty working in the open labor market."   (Tr. 722.)   Dr. Sky stated that Plaintiff would have difficulty with focus and concentration and tasks that require accuracy, persistence, and pace.   *Id.*   He noted that these difficulties would be compounded by his chronic sleep disturbance.   *Id.*   Dr. Sky further found that Plaintiff would likely have difficulty responding to minor and major changes in the workplace; and interacting with coworkers, supervisors, and the general public.   *Id.*   Finally, he

noted that a particular concern would be Plaintiff's ability to follow safety protocols and guidelines foundational to an industrial type of environment.   *Id.*

The ALJ found Dr. Sky's opinions "somewhat persuasive."   (Tr. 966.)   She stated that the medical evidence was consistent with moderate limitations in maintaining concentration, persistence, and pace due to low motivation and poor concentration and focus; and moderate limitations interacting with others due to irritability and isolative behaviors.   *Id.*   The ALJ stated that the evidence was inconsistent with more than mild limitations in responding to changes.   *Id.*   She cited Plaintiff's ability to care for himself and assist with the care of his elderly stepfather, live independently without issue when he later purchased a home, and his good insight and judgment in exams without mood lability.   Additionally, the ALJ found that there was no evidence to support an inability to follow safety protocols and guidelines in an industrial-type environment.   The ALJ again cited Plaintiff's normal judgment and insight.   As to supportability, the ALJ found that Dr. Sky's opinions were "somewhat supportable."   (Tr. 966.)   She explained that Dr. Sky found Plaintiff had adequate concentration and attention in the exam with some vagueness recalling details and dates, but Dr. Sky did not document deficits in Plaintiff's interaction, mood lability, or outbursts.   The ALJ stated that the remainder of the medical record was lacking evidence of issues dealing with changes or following safety protocols.   The ALJ concluded that an RFC limiting Plaintiff to unskilled work with social limits and few changes would account for his limitations in functioning.

Plaintiff argues that the ALJ failed to properly evaluate the consistency of Dr. Sky's opinion.   He contends that the ALJ instead "evaluated *the medical evidence*."   (Doc. 16 at 9) (emphasis in original).   With regard to supportability, Plaintiff argues that the decision fails to

discuss whether Dr. Sky provided examples of objective medical evidence and supporting explanations.

The undersigned finds that the ALJ complied with the regulations in evaluating Dr. Sky's opinions. The ALJ explained that the moderate limitations in concentration, persistence, and pace were consistent with the "medical evidence;" and the moderate limitations in Plaintiff's ability to interact with others was consistent with the other "evidence." She found that "the evidence" was inconsistent with more than mild limitations in responding to changes. In making this finding, the ALJ cited Plaintiff's statement that changes caused stress, along with the converse statement of Plaintiff that routines caused stress. (Tr. 966, 249.) She also noted that Plaintiff was able to live independently and had good insight and judgment in exams. (Tr. 966, 1243, 1291.) The ALJ therefore properly analyzed whether Dr. Sky's opinions were consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c). Similarly, the ALJ addressed the supportability of Dr. Sky's opinions by pointing to findings of Dr. Sky on examination.

**Dr. David Volarich**

Plaintiff saw Dr. Volarich for an independent medical examination in connection with his work injury on March 11, 2019. (Tr. 731-40.) Plaintiff reported experiencing new onset low back pain with radiating symptoms down his right lower extremity after lifting generators weighing approximately 100 pounds for about two weeks in August 2016. At his examination, Plaintiff complained of constant low back pain of varying severity and right lower extremity radicular symptoms occurring down the anterior aspect of his leg with associated right lower extremity pain and numbness. (Tr. 734.) He reported that he has had to ambulate with a cane since his surgery, but denied ever falling. *Id.* Plaintiff described increased back discomfort

with activity in general and reported he was able to sit for 10 to 30 minutes, stand for one minute, walk for an unknown period of time, and only lift less than a gallon of milk. *Id.* He stated that he was able to care for himself on a daily basis but reported problems with his memory and occasional difficulty bathing due to balance problems. *Id.* Plaintiff indicated that he is not able to do housework or yard work and there are some days where he is unable to get out of bed due to severe pain. (Tr. 735.) He awakens every one to two hours secondary to pain. *Id.* Plaintiff indicated that he has increased back pain with long drives and cold weather. *Id.* On physical examination, Dr. Volarich found Plaintiff had normal strength in the upper extremities, but some weakness in the right lower extremity, decreased range of motion of the lumbar spine, normal sensory exam other than diminished pinprick sensation on the right lateral thigh, and some decreased reflexes. (Tr. 736.) Plaintiff used a cane in his right hand and walked forward flexed at the waist. *Id.* Dr. Volarich diagnosed Plaintiff with lumbar right leg radiculopathy secondary to disc herniations at L4-5 to the right with disc bulge at L5-S1 post-surgery, and post laminectomy syndrome. (Tr. 737.) He recommended that Plaintiff start a home exercise program for his spine daily, use over the counter pain medication as needed, walk 30 minutes a day, and pursue additional pain management services if his pain does not improve. (Tr. 738.) Dr. Volarich expressed the opinion that Plaintiff should limit repetitive bending, twisting, lifting, pushing, pulling, carrying, and climbing; should not lift weight greater than 15 pounds and should only lift occasionally; should not lift weight over his head or away from his body or carry weight over long distances or uneven terrain; should avoid remaining in a fixed position for more than 30 minutes at a time; and should rest when needed. (Tr. 739.)

The ALJ found Dr. Volarich's opinions "somewhat persuasive." (Tr. 967.) She explained that the medical evidence was consistent with limitations in standing, walking, lifting,

and carrying to the sedentary level, which limits his weight to no more than 10 pounds occasionally. *Id.* The ALJ stated that the evidence was also consistent with only occasional postural activities and preclusion of climbing ladders, ropes, and scaffolds to account for Plaintiff's pain, balance issues, and right lower extremity weakness. *Id.* She stated that the evidence was inconsistent with the pushing, pulling, overhead lifting, and lifting away from the body limitations found by Dr. Volarich. *Id.* The ALJ noted that there was no evidence of reduced upper extremity strength or range of motion or reduced motion in the hips, knees, or ankles; and little evidence consistent with an inability to remain in a fixed position for more than 30 minutes. *Id.* She further pointed out that Dr. Taylor did not document a need to change positions frequently. With regard to supportability, the ALJ found that Dr. Volarich's opinions are not supported by his orthopedic and neurological exams of Plaintiff. The ALJ concluded that, although the later evidence supports greater limitations in standing, walking, lifting, and carrying due to Plaintiff's ongoing pain and reduced range of motion, the evidence does not support the fixed position limitation, nor did Dr. Volarich explain how he estimated the frequency of his positional changes. (Tr. 967.)

Plaintiff argues that the ALJ failed to discuss whether Dr. Volarich's opinion provides examples of objective medical evidence and explanations to support the opinion and only discusses medical evidence that does not support the opinions The undersigned disagrees. The ALJ agreed with many of Dr. Volarich's opinions and explained why other limitations were not consistent with the record or supported by Dr. Volarich's examination. For example, the ALJ cited Dr. Volarich's finding on examination that Plaintiff had full upper extremity strength and range of motion when determining the limitation in pushing, pulling, and overhead lifting was unsupported. The ALJ ultimately found that Plaintiff had *greater limitations* in standing,

walking, lifting, and carrying.    Plaintiff has failed to demonstrate error in the ALJ's evaluation of Dr. Volarich's opinions.

### Dr. Jeffrey Farb

Plaintiff saw Dr. Farb for an independent psychological evaluation on June 27, 2019. (Tr. 741-52.)    Plaintiff complained of a depressed mood with frequent irritability, stating "my brain was my strength…now that's gone. I'm somebody else."   (Tr. 742.)   He reported spending his days watching television and playing video games.  *Id.*   Plaintiff lived with his stepfather, which he described as "stressful as the stepfather's dementia is worsening."  *Id.*   On mental status examination, Plaintiff had poor hygiene and an unkempt appearance; he appeared to be in pain, using a cane with much effort ambulating around the office; he was oriented with no evidence of a thought disorder or psychotic symptoms; his mood was depressed with a flattened affect; his thought content was coherent; he expressed hopelessness and helplessness; he denied suicidal ideation or intent; his memory reflected dysfunction as he struggled to remember specific events, dates, and names; and he reported sleeping only two hours at a time and feeling consistent fatigue.   (Tr. 743-44.)   Dr. Farb diagnosed Plaintiff with attention deficit disorder and major depressive disorder with anxious distress.   (Tr. 744.)   Dr. Farb expressed the opinion that Plaintiff was unable to return to his work as a warehouse worker due to compromised attention and concentration, depressed mood and anxiety, intermittent irritability, poor memory, and feelings of hopelessness that would pose a significant danger to himself and coworkers.   (Tr. 745.)   He found that Plaintiff would have difficulty establishing and maintaining employment.  *Id.*   Dr. Farb stated that Plaintiff's ability to handle even minimal stress was significantly limited as was his ability to function within interpersonal relationships.

*Id.*   He remarked that Plaintiff's poor attention and concentration, memory dysfunction, and limited adaptability to change further compromised his employment.   *Id.*

The ALJ found Dr. Farb's opinions "not persuasive."   (Tr. 967.)   She first properly noted that any conclusions regarding Plaintiff' ability to perform work activity are reserved to the Commissioner.   The ALJ stated that the medical evidence is inconsistent with an inability to handle even minimal stress.   She cited Plaintiff's intact insight and judgment, no mood lability, and no patterns of outbursts, tearfulness, or crying spells in treatment.   The ALJ stated that Plaintiff continued to live independently despite stressors such as lack of water due to financial issues, without documented decline in his functioning in exams.   (Tr. 968, 1272-75, 1284-86.) Instead, the ALJ noted that exams showed fair focus and no memory deficits.   *Id.*   The ALJ stated that the evidence is consistent with moderate social limitations, but there is no evidence of more than moderate limitations, as he was cooperative, maintained his temper and composure in exams, and reported no ongoing interpersonal conflicts.   (Tr. 968.)   She stated that the RFC she formulated accounts for Plaintiff's poor memory and focus as found by Dr. Farb and limits changes in routine accordingly.   *Id.*   Finally, the ALJ found that Dr. Farb's opinions are not supportable.   *Id.*   She stated that Plaintiff's overall mental status exams were within normal limits and he had no hospitalizations or emergency care, even when he was without treatment for long periods of time.   *Id.*

Plaintiff argues that the ALJ discusses various mental status findings but fails to explain how the findings are inconsistent with Dr. Farb's opinions.   He further argues that the ALJ fails to discuss Dr. Farb's opinion and whether he provided examples of objective evidence and testing to support his conclusions.

The undersigned finds that the ALJ complied with the regulations when evaluating Dr. Farb's opinions.   She pointed to exam findings and Plaintiff's reports to other providers that were inconsistent with Dr. Farb's opinions.   The ALJ addressed Dr. Farb's findings on examination of poor memory and focus and explained that she had accounted for these limitations in Plaintiff's RFC.   Plaintiff fails to point to any error.

### 3.  State Agency Medical Consultants

#### Psychological Consultant Dr. Isenberg

Dr. Isenberg provided prior administrative medical findings on July 23, 2019.   (Tr. 76-78, 86-88, 93-95.)   Dr. Isenberg found that Plaintiff had moderate limitations in his ability to work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.   (Tr. 93-94.)   He expressed the opinion that Plaintiff could carry out simple work instruction, maintain adequate attendance, sustain an ordinary routine without special supervision, interact adequately with peers and supervisors in a limited social setting, and adapt to most usual changes common to a competitive work setting.   (Tr. 94.)

The ALJ found Dr. Isenberg's opinions "somewhat persuasive."   (Tr. 965.)   She explained that the medical evidence was consistent with moderate limitations in interacting with others due to isolative behaviors and irritability displayed in treatment; and was also consistent with moderate limitations in maintaining concentration, persistence, and pace due to reported low motivation, poor concentration, and restlessness in exams.   *Id.*   The ALJ noted, however, that the evidence was also consistent with moderate limitations in understanding, remembering, and applying information given Plaintiff's memory deficits.   *Id.*   She concluded that Dr. Isenberg's opinions were supportable by the overall mental status exams, consultative

examination, limited mental health treatment, and no hospitalizations for mental health symptoms.  *Id.*

### Medical Consultant Dr. Schell

Dr. Schell provided opinions regarding Plaintiff's physical limitations on July 24, 2019. (Tr. 72-76, 89-93.)   Dr. Schell found that Plaintiff was limited to sedentary work, with only occasional climbing of ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ramps and stairs; and he must avoid hazards and vibration.   (Tr. 90-93.)

The ALJ found that the medical evidence is consistent with a limitation to sedentary work, given Plaintiff's ongoing back pain and reduced strength in the right lower extremity, "which limited his lifting and carrying, standing, and walking and necessitated postural and environmental limitations due to pain."   (Tr. 965.)   The ALJ stated that Dr. Schell's opinions were supported by the functional capacity evaluation of Dr. Taylor, which noted an ability to lift ten pounds; and by his full strength demonstrated in his consultative exam with Amanda Pleimann, D.O.  *Id.*; 623.

Plaintiff argues that the ALJ's evaluation of the opinions of Drs. Isenberg and Schell does not adequately explain how supportability and consistency were considered.   He states that the ALJ failed to consider supportability because the decision lacks any discussion of whether the consultants provided examples of objective medical evidence and explanations to support their opinions.

A review of the opinions of Drs. Isenberg and Schell reveals that they provided a detailed summary of the medical records of Plaintiff's physical and mental health providers' treatment

notes and the results of consultative examinations.   For example, Dr. Isenberg cited the following medical evidence, in relevant part:

- In October 2017, Plaintiff reported trouble with lack of motivation and focus, his insight and judgment were "fair," and his affect was blunted.   Plaintiff was not taking any psychiatric medications.   (Tr. 597.)

- In April 2018, Plaintiff complained of worsening anxiety due to his back condition; panic attacks; low mood; and low concentration and energy partly due to his back pain.   It was noted that he had not been to the emergency room.   (Tr. 588.)

- In December 2018, Plaintiff reported impaired concentration and memory due to his work injury.   He had not taken medications for "a few months" for financial reasons. On examination, his hygiene and insight were fair and his mood was depressed.   (Tr. 577.)

- In January 2019, Plaintiff's hygiene was good, his insight and judgment were "fair to good," and his affect was flat.   He still was not taking any medications.   (Tr. 581.)

- Dr. Johnson examined Plaintiff on June 20, 2019, and concluded he had mild limitations. (Tr. 616.)

- On June 29, 2019, consultative examiner Dr. Pleimann noted that Plaintiff was alert, had good eye contact, had fluent speech, his mood was appropriate, his thought processes were clear, and his concentration was good.   Dr. Pleimann found Plaintiff's memory was mildly impaired as he could only recall one out of three objects and could not recall past medical events or dates.   (Tr. 622.)

(Tr. 86-87.)   Similarly, Dr. Schell summarized the medical evidence regarding Plaintiff's physical impairments, including the following:

- Plaintiff presented to the emergency room for back pain in December 2017, less than a week after the dural leak surgery, at which time he had normal musculoskeletal range of motion and no edema or tenderness.   Plaintiff used a cane and was able to sit to stand with minimal assistance, and ambulate 150 feet with his cane.        (Tr. 385.)

- In July 2018, Plaintiff reported mild improvement in his back pain since surgery.   On examination, Plaintiff had muscle spasm and moderate pain with range of motion of the lumbar spine.   (Tr. 606.)

- At a June 2019 psychiatric examination, Plaintiff appeared as though he was experiencing pain, his posture was somewhat stooped, and he walked very slowly with a cane.   (Tr. 615-16)

- At his June 2019 consultative examination with Dr. Pleimann, Plaintiff walked with an asymmetric, slow gait.   He did not present with a cane and refused to walk around the exam room without it.   Dr. Pleimann noted diminished sensation on the left lower extremity to light touch, and some dizziness with positional changes, but no swelling, tenderness, or muscle spasm.   Plaintiff was able to squat and rise from sitting with difficulty, rise from a sitting position without assistance, had difficulty getting up and down from the exam table, was unable to walk on heels and toes, could not stand or hop on one foot, could dress and undress adequately, had full range of motion and full strength of the upper extremity bilaterally, and had mildly decreased range of motion of the lumbar spine.   Dr. Pleimann was unable to get a true straight leg raise test due to Plaintiff's reported inability to lie supine secondary to pain.   (Tr. 623.)

(Tr. 92-93.)

Although the ALJ could have been more explicit in citing the evidence upon which the state agency consultants relied, "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks omitted); *see Horwath v. Kijakazi*, No. 6:22-CV-03031-DGK, 2023 WL 3865507, at *3 (W.D. Mo. June 7, 2023) ("Although the ALJ certainly could have written more, albeit on an already 19-page decision" regarding her decision to find the state agency consultants' opinions persuasive, the failure to do so was harmless when the plaintiff "has not provided any indication that the ALJ would have decided differently had she more thoroughly articulated the factors.").

In sum, Plaintiff has failed to point to any reversible error in the ALJ's evaluation of the medical opinion evidence.   Thus, this claim will be denied.

The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following additional limitations:

> the claimant can occasionally climb ramps and stairs, but should avoid climbing ladders, ropes, and scaffolds.   He can occasionally balance (as defined by the DOT and SCO) and occasionally stoop, kneel, crouch, and crawl.   He should avoid hazards such as unprotected heights and dangerous machinery, extreme cold, extreme heat, and vibration.   He is able to complete simple, routine tasks with minimal changes in job duties and setting.   He is able to occasionally interact with coworkers, supervisors, and the general public.

(Tr. 959.)

To account for Plaintiff's supported limitations with respect to all of his severe impairments, the ALJ limited Plaintiff to an extremely reduced range of sedentary work.   These limitations are consistent with Plaintiff's documented problems with balance, memory, concentration, limitation of motion of the lumbar spine, pain, depression, and anxiety; sporadic

medical treatment received after his surgeries and lack of prescription medication taken; and ability to live independently and engage in a variety of activities notwithstanding symptoms from his impairments.   The ALJ considered the opinion of Plaintiff's orthopedist that Plaintiff could return to work at the light exertional level, the opinions of the state agency medical and psychological consultants that Plaintiff could perform a range of sedentary work, along with the findings of the consultative examiners, and formulated an RFC not identical to any of the opinions.   That is precisely the role of the ALJ.

The Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.


/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of September, 2025.